IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JUNE NIEMIEC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) DOCKET NO.: **1:13-CV-0069** |
| v. | ) JURY DEMAND (12) |
| | ) |
| CALSONICKANSEI NORTH | ) JUDGE HAYNES |
| AMERICA, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## (PROPOSED) INITIAL CASE MANAGEMENT ORDER

I. JURISDICTION AND VENUE: The court has jurisdiction pursuant to Americans with Disabilities Act Amendments Act of 2008, 42 USC § 12101 et seq. and the Family Medical Leave Act of 1993, 29 U.S.C. 2601, et seq. Plaintiff's claims arise under the laws of the United States.

II. BRIEF THEORIES OF THE PARTIES:

1) PLAINTIFF:

On or about December 13, 2011, Plaintiff suffered injuries to her neck and back and received medical treatment for these injuries. On or about June of 2012, Plaintiff was assigned to work as an order puller in the main building which required her to pull heavier items as compared to her previous position in CI Electronics where she pulled orders for smaller items and was able to physically handle the position. On or about June of 2012, Plaintiff was working under physical restrictions of limited lifting and climbing and requested a reasonable accommodation and/or a return to her previous position as order puller in CI Electronics since

the position was not as physically demanding as the order puller position in the main building. From June of 2012 through July 2012, Plaintiff voiced her concerns to Defendant about performing the more physically demanding position as order puller in the main building and furthermore requested a reasonable accommodation of being moved back to the order puller position in the CI Electronics department but was denied the request. At said relevant dates and times, the Defendant did not engage in an interactive process with the Plaintiff after her several requests for a reasonable accommodation and never discussed any options for the Plaintiff to continue working. The Plaintiff was struggling with her duties in the more physically demanding position as order puller in the main building and requested a medical leave of absence under the FMLA so she could return to her medical doctor to address the physical problems she was experiencing with the more physically demanding order puller position. On or about August 3, 2012, Plaintiff was placed on a fifteen day suspension and was informed by the Defendant that she needed a statement from her physician which provided more detail of her work restrictions. The Plaintiff requested that her family physician complete the Family and Medical Leave Act (hereinafter "FMLA") forms which were completed on July 31, 2012. The Plaintiff returned the FMLA paperwork back to the Defendant but was not permitted to take medical leave with respect to her medical conditions and furthermore was not permitted to return to work. Defendant wrongfully discriminated against the Plaintiff based upon her disabilities, actual and/or perceived, in violation of the Americans with Disabilities Act Amendments Act of 2008, 42 USC § 12101 et seq. and the Family Medical Leave Act of 1993, 29 U.S.C. 2601, et seq.

2) DEFENDANT:

CalsonicKansei North America, Inc. ("CKNA" or "Defendant") denies that Plaintiff was subject to discrimination in her terms and conditions of employment. Specifically, Defendant denies that it failed to offer reasonable accommodation to Plaintiff's alleged disability status, that she was terminated because of her disability or that she was otherwise discriminated against in any other aspects of her employment.

Plaintiff began her assignment at CKNA as a temporary employee through Randstad Staffing Company in August of 2010. While Plaintiff's employment tenure at Defendant was not long she experienced difficulty in the performance of her job duties and compliance with safety requirements.

On December 13, 2011, Plaintiff injured herself when she tripped and was sent to the Emergency Room. When she returned to work the next day, she told Defendant's Human Resources representative that she was taking a narcotic pain medication, Lortab. The HR representative advised Plaintiff she could not take narcotics while working.

On June 4, 2012, Plaintiff, along with approximately 350 other Randstad temporary employees, became full-time employees of CKNA. Plaintiff's job assignment continued to be the same.

On May 3, 2012, Plaintiff presented a request for intermittent leave under the Family Medical Leave Act (FMLA) for absences relating back to October of 2011. The document was incomplete, however, as it failed to include all the necessary information including identification of the condition for which she sought leave. The restriction to avoid "repetitive heavy lifting and climbing" did not conflict with her work assignment.

On or about July 30, 2012, Plaintiff's Supervisor observed her utilizing unsafe work methods in pulling parts. Plaintiff was not performing her duties correctly and evidenced deliberate unsafe activities. As a result, Plaintiff was sent home for the day by her supervisor. On July 31, 2012, Defendant's HR Manager and HR Generalist interviewed Plaintiff, her Supervisor and the Lead person regarding the situation. Defendant determined that the Supervisor's directives allowed her to work within the restrictions while performing the job safely, but that Plaintiff deliberately ignored those directions. Plaintiff also claimed that the mistakes she was making in her assignments were the result of prescription medications that she was taking to cope with her back pain. Plaintiff's admission was a violation of the Company's safety rules which prohibit

employees from working under the influence of prescription narcotics in a manufacturing environment. As a result of this admission, Plaintiff was suspended from work pending further investigation.

On August 2, 2012, Defendant provided Plaintiff with an additional FMLA form and again requested to provide updated and complete information. She was specifically requested to provide information related to the medications she was taking for her condition.

Plaintiff submitted an updated FMLA form dated August 17, 2012, which identified specific restrictions on weight limits for lifting and also included the doctor's statement that the narcotics medication she would be taking should be taken twice a day <u>while not at work</u>. Additional medications included a muscle relaxant, which should not be taken while working with machinery, and Mobic which she could take while at work. Plaintiff had previously been instructed regarding working under the influence of narcotics, and she failed to follow these instructions and those of her supervisor regarding safe work practices. Plaintiff's admission that she was working under the influence of narcotics was both against the direction of her physician and contrary to Company policy. Therefore, Plaintiff was terminated for violation of safety rules and the alcohol and drug policy.

Defendant submits that Plaintiff is not a qualified individual with the disability under the ADAAA. Further, Plaintiff's failure to follow its work rules including performing her job in an unsafe manner and working while under the influence of narcotics was a legitimate, nondiscriminatory reason for her termination. At each step Defendant worked with Plaintiff in an attempt to accommodate her condition and restrictions. It advised her on how to safely perform her job duties as an order puller given the restrictions on climbing and lifting. Her supervisor also counseled her on the need to follow safe work procedures and to seek assistance when she could not perform her job due to the lifting restrictions. Defendant denies that there was an open position in CI Electronics to move Plaintiff to. Furthermore, she was capable of performing her job as an order puller consistent with her restrictions. However, Defendant could not accommodate Plaintiff's refusal to follow safe work practices and to take prescription narcotics while at work in violation of policy.

III. SCHEDULE OF PRETRIAL PROCEEDINGS

A. Rule 26(a)(1) Disclosure

The parties shall make their Rule 26(a)(1)(A) through (E) disclosures within 30 days from the date of the initial case management conference on **October 30, 2013.**

B. Meeting of Counsel and Parties to Discuss Settlement Prospects

Ninety (90) days from the date of the initial case management conference, counsel and clients are required to have a face-to-face meeting to discuss whether this case can be resolved without further discovery proceedings. If a party, other than a natural person, is involved in this litigation, a representative who has the authority to settle shall attend this meeting on behalf of that party. After the meeting is conducted, counsel shall prepare a report and file it with the Court reflecting that the parties met and that the parties made a good faith effort to evaluate the resolution of this case. This report should also include whether the parties believed that one of the Alternative Dispute Resolution ("ADR") procedures under the Local Rules would further assist the parties in resolving this matter.

C. Other Pretrial Discovery Matters

As determined at the case management conference on **September 30, 2013**, this action is set for a jury trial on _January 13, 2015 at 9:00 am in Cahula_. The parties expect the trial to last three (3) days.

If this action is to be settled, the Law Clerk shall be notified by noon, _January 9, 2015_. If the settlement is reach thereafter resulting in the non-utilization of jurors, the costs of summoning jurors may be taxed to the parties dependent upon the circumstances.

A pretrial conference shall be held *December 15, 2014 at 3:00 pm*. A proposed pretrial order shall be submitted at the pretrial conference.

All discovery shall be completed by the close of business on **June 15, 2014.** All written discovery shall be submitted in sufficient time so that the response shall be in hand by **May 1, 2014.** All discovery related statements shall be filed by the close of business on **February 18, 2014.** No motions related to discovery or a for a protective order shall be filed until a discovery/protective order dispute conference has taken place and the attorneys of record shall attend and meet, face-to-face, in an effort to resolve the dispute and a jointly signed discovery/protective order dispute statement is submitted setting forth precisely the remaining issues in dispute and the reasons why those issues remain resolved.

All dispositive motions[1] and Daubert motions shall be filed by the close of business on **August 29, 2014,** and any response thereto shall be filed by the close of business on **September 30, 2014.** Any reply shall be filed by the closed of business on **Ocotober 15, 2014.**[2]

Any motion to amend the pleadings or join parties shall be filed in sufficient time to permit any discovery necessary because of the proposed amendment to be obtained within the time for discovery. No amendments will be allowed if to do so will result in a delay in the disposition of the action by requiring an extension of the discovery deadline.

There shall be no stay of discovery pending disposition of any motions.

The response time for all written discovery and requests for admissions is reduced from thirty (30) to twenty (20) *days.*

---

[1] No memorandum in support of or in opposition to any motion shall exceed twenty (20) pages. No reply shall be filed to any response unless invited by the Court.

[2] Strict compliance is required to Rule 8(b)(7), Local Rules of Court (effective March 1, 1994) relating to motions for summary judgement.

Interrogatories pursuant to Rule 33, Federal Rules of Civil Procedure, shall be limited to thirty (30) such interrogatories. Subparts of a question shall be counted as additional questions for purposes of the overall number. In all other respects, Rule 9(a), Local Rules of Court (effective March 1, 1994) shall govern.

By the close of business on **May 30, 2014**, the Plaintiff shall declare the Defendant (not to file with the Court) the identity of his expert witnesses and provide all the information specified in Rule 26(a)(2)(B).

By the close of business on **June 30, 2014**, the Defendant shall declare to the Plaintiff (not to file with the Court) the identity of his expert witnesses and provide all the information specified in Rule 26(a)(2)(B).

Any supplements to expert reports shall be filed by the close of business on **July 18, 2014.** There shall not be any rebuttal expert witnesses.

To reduce the needless expenditure of time and expense, there shall not be any discovery depositions taken of expert witnesses. A party may, however, serve contention interrogatories and requests for admissions upon another party's expert. If these discovery methods prove ineffective, a party may move to take the deposition of the expert. In a diversity action, a treating physician is considered a fact witness unless the physician expresses opinions beyond the physician's actual treatment of the party.

For expert witnesses, the expert's Fed. R. Civ. P. 26(a)(2) report is considered to be the expert's direct examination testimony at trial. If an expert expects to expound his or her testimony beyond the wording of the expert's report, the party calling the expert shall inform the opposing party with the specifics of that expounding testimony at least 15 days prior to the dispositive motion deadline.

These rules on experts are to ensure full compliance with Rule 26(a)(2); to enable the parties to evaluate any Daubert challenges prior to filing dispositive motions; to avoid conflicts with the experts' schedules; and to avoid the costs of expert depositions.

Local Rule I 2(c)(6)(c) (effective March 1, 1994) relating to expert witnesses shall apply in this action, and strict compliance is required.

It is so ORDERED.

ENTERED this the 21st day of October, 2013.

WILLIAM J. HAYNES, JR.
United States District Judge